## MOUNT HOPE FINISHING CO. v. SENECA TEXTILE CORPORATION.

### No. 131.

Circuit Court of Appeals, Second Circuit.

July 26, 1943.

Pennie, Davis, Marvin & Edmonds, of New York City (Frank E. Barrows and Daniel L. Morris, both of New York City, and Mark M. Horblit and Lawrence G. Miller, both of Boston, Mass., of counsel), for appellant.

Gifford, Scull & Burgess, of New York City (Newton A. Burgess and H. H. Hamilton, both of New York City, of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The patent in suit was issued March 1, 1938 on the application of Robertson and Staples filed on September 14, 1936, and assigned to the plaintiff. It relates to "a new type of finished fabric" and particularly, though not exclusively, to dotted marquisette. Dotted marquisette is an open mesh fabric like mosquito netting dotted with tufts of rovings. Rovings are very slightly twisted masses of fibres. The open mesh ground of the fabric is woven of small, fine, tightly twisted threads, and the dots are made by interweaving with the ground threads at spaced intervals relatively large rovings, which are then sheared in a clipping machine to leave the free ends extending in both directions from the interwoven portion. This fabric is used chiefly for curtains. Two qualities are particularly desirable, namely, that the dots shall be fluffy and the ground fabric shall be stiffened with starch or otherwise sized so as to hang properly. The patent purports to disclose a method and apparatus for finishing fabric of the type of dotted marquisette so as to attain fluffy dots on a stiffened ground fabric. Two of the claims in suit (14 and 15) claim the product as a new article of manufacture, two (claims 10 and 11) are for the apparatus and the others (7, 8, 9, 12 and 13) cover the method of finishing.

The defendant, Seneca Textile Corporation, is a converter of textiles, that is, it purchases fabric as grey goods, has it finished and then sells the finished product. The finishing of dotted marquisettes is done for Seneca by its wholly owned subsidiary, Arkwright Corporation, a Massachusetts corporation and not a party to the present action. Seneca is charged by the plaintiff with direct infringement of claims 14 and 15 by the sale of dotted marquisettes; it is charged with both contributory and direct infringement of claims 7 to 13 inclusive by reason of Arkwright's acts in using the process and apparatus of the patent in finishing the fabric sold by Seneca. After a lengthy trial the district judge wrote a careful opinion and made detailed findings of fact and of law. He concluded that the patent was invalid (1) because of prior art and prior uses and (2) because the disclosure was insufficient to comply with

the statutory requirements, 35 U.S.C.A. § 33. He held also that the claims in suit were limited in scope by reason of proceedings in the Patent Office and were not infringed by Seneca, directly or contributorily, nor by Arkwright. The complaint was accordingly dismissed. This appeal followed.

Dotted marquisettes were known for many years before November 1934 when the plaintiff first put into operation the patented method of finishing them. After the grey goods had been subjected to preliminary processes of mercerizing, bleaching, etc., the usual method of finishing was to size the fabric by passing it through a starch solution bath and a mangle, with the result that after drying not only was the fabric ground stiffened by starch but the dots were also somewhat starched and matted. Most of the dotted marquisettes finished in this way had short clipped dots, the rovings being clipped close to the interwoven portion. But in 1934 the manufacturers of grey goods began to bring out dotted marquisettes with longer and larger rovings in imitation of the dots of the old-fashioned candlewick bedspread. In attempting to finish goods of this type and solve the problem of drying the dots so that the fabric would not shrink in width when it came out of the tenter frame, the plaintiff's employees, Robertson and Staples, hit upon the process of the patent in suit. It consists in subjecting the grey goods to the usual pretreating operations, then passing it over an air blast directed at an acute angle to the face of the goods and then spraying the size on the reverse side, after which the fabric passes to the tenter frame where it is stretched in width and dried. The novel features asserted for the patented process are two: fluffing up the dots by blowing compressed air against them, and "thereafter applying size to the back only of said fabric, leaving the roving ends unsized and in their air fluffed up condition." The quotation is from claim 8. In slightly differing language each of the process and product claims in suit requires the fabric ground to be sized and the dots to be fluffed up and unsized. Similarly the apparatus claims in suit call for means to do these things.

Much of the argument has revolved about a dispute as to what the patent means by "sized" and "unsized." It is conceded by the plaintiff that it is impossible to spray starch against the back of an open mesh fabric like marquisette without having some of the spray reach the dots. Chemical tests of the accused fabric showed that the roving ends of the dots contain 70% as much starch by weight as is in the fabric ground, which is concededly sized. The patent states that the size is to be "applied to the back of the fabric so as not to reach the raised fibers of the dots or affect the fluffed up appearance thereof,"[1] but gives no instructions as to how this is to be done. Hence the defendant argues that the patent merely stated the problem without telling how to solve it and consequently failed to make an adequate disclosure. The plaintiff replies that whether the dots are "unsized" is not to be determined by a chemical test but by "their appearance and feel," which is the only test used by the trade; and that under this test the dots remain fluffy and "unsized." The district court accepted the chemical test.

But even on the assumption that the "appearance and feel" test is the proper one, we think the patent must be held invalid in view of prior patents and prior uses. Both steps claimed as novel in the plaintiff's process were old in the textile art although no one had previously applied both to the finishing of dotted marquisettes. But the applicants for the patent in suit did not conceive of their invention as limited to dotted marquisettes[2]; they considered it broadly applicable to the treatment of any fabric having a napped surface. Thus, it is stated in the specifications, page 3, column 2, beginning at line 34:

"In Fig. 6 there is shown the application of one form of the invention for the treatment of the nap or pile of other fabrics, such as shoe ducks, where the nap extends continuously over the face of the fabric, or of other fabrics having a napped surface of any kind.

"* * * The functioning of the air in turbulent flow and the parts associated with the air slot, however, is substantially the same as in the case of the device shown in Fig. 4.

"This process and apparatus have been found not only effective in fluffing up the nap on fabrics where the nap has become matted and pressed down by the usual pre-

---

[1] Page 3, col. 2, lines 1–3.

[2] Only claims 13 and 15 specifically mention marquisette fabric.

ceding finishing treatment, but also to materially improve the brilliancy of color in dyed piled or napped fabrics where the color has been dulled by loose particles of fiber or lint previously deposited by the napping process."

Since the patent treats pile or napped fabrics and dotted marquisette as equivalents, the district court did not go too far afield, as the appellant contends, in considering as relevant references patents and prior uses relating to pile or napped fabrics. British Patent No. 19,789 of 1889 for finishing woven sealskins and other pile fabrics discloses the use of steam or heated air projected through a narrow slit and "blown at a suitable angle on to the face of the pile to raise and dry it." The use of a thin sheet of compressed air to fluff up the nap of hats is shown in United States Patent to Mallory No. 1,052,934. A similar use of compressed air had been practised by the Stetson Hat Company since 1911, and steam under pressure[3] had been used by the Mohawk Carpet Company since 1931 to fluff up the nap on Axminster rugs, which were then subjected to the application of sizing to the back and were then dried. This is the same sequence as the patent specifies. Hence the use of compressed air for fluffing up fibers or nap was well known in the textile art long before 1934.

The application of sizing to the back only of a fabric had also been common knowledge for many years. This was proved not only by the prior use of the Mohawk Carpet Company but also by British Patent No. 2573, U. S. Patent No. 209,805 to Goodall, and U. S. Patent No. 2,155,127 to Graham.[4] Evidence respecting two prior uses with respect to dotted marquisettes was presented and accepted by the court as adequate to prove them. One was that of the Royal Curtain Company which employed Bradford Dyeing Association in the summer of 1934 to finish a marquisette of the candlewick type having dots of large rovings and long shear. Bradford did not use compressed air to fluff up the dots but it did spray sizing on the back of the fabric, applying the spray at an angle so as not to drive the spray "through the cloth as much as it would have if it were directed toward the cloth." Between 50,000 and 100,000 yards of this fabric were finished and sold under the name "Royalwik." It was exhibited as curtain material at New York and Chicago shows in July and August 1934. The other prior use was at the Defiance Bleachery. There dotted marquisettes of the candlewick type were finished by applying the sizing by means of a roller to the back only of the ground fabric, as shown in Patent No. 2,155,127 to Graham. Goods so finished were sold in October 1934. Although the appellant criticizes the proof of these prior uses we are not convinced from a study of the record that Judge Goddard's findings that they were adequately established should be set aside.

Nor, if they were set aside, could we accept the contention that invention was required to apply to dotted marquisettes the familiar finishing operations of using compressed air or steam to fluff up nap and applying sizing to the reverse side of the fabric. When marquisettes of the candlewick type were brought out, the starch bath and mangle method of sizing no longer sufficed; but the conceptions of sizing only the back of pile fabric and of fluffing the pile by compressed air were already available to those skilled in the textile art. The patent was rightly held invalid for lack of invention.

Judgment affirmed.

[3] The patent in suit makes no distinction between air and steam. Some of the claims call for "gas under pressure," others call for "compressed air."

[4] This was issued on a division of an original application filed February 2, 1935. The district court found that goods made in accordance with the Graham claims were sold in the market October 15, 1934.